FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARTIN CHAIREZ-CASTREJON,<br><br>　　　　　　　　　　Petitioner,<br>v.<br><br>DANIEL BIBLE, JAMES O. TRACY, JEH JOHNSON, and LORETTA LYNCH,<br><br>　　　　　　　　　　Respondents. | MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241<br><br>Case No. 2:15-cv-825-JNP-EJF<br><br>Judge Jill N. Parrish<br>Magistrate Judge Evelyn J. Furse |

Before the court is Petitioner Martin Chairez-Castrejon's ("Mr. Chairez") Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Docket 2). Mr. Chairez contends that the Government is violating his due process rights by detaining him since March 14, 2013 without a bond hearing under 8 U.S.C. § 1226(c).

On May 12, 2016, the court held a hearing on Mr. Chairez's petition. The court then took Mr. Chairez's petition under advisement. After careful consideration of the record, relevant law, and the parties' memoranda, the court GRANTS Mr. Chairez's Petition for Writ of Habeas Corpus (Docket 2).

**BACKGROUND**

Mr. Chairez is a fifty-one-year-old Mexican native who has been a lawful permanent resident of the United States since 1990. On December 3, 2012, Mr. Chairez was convicted of felony discharge of a firearm in violation of Utah Code § 76-10-508.1, a third degree felony. In February 2013, the state trial court sentenced Mr. Chairez to forty-four days in jail.

On March 14, 2013, Mr. Chairez completed his sentence and was transferred into the custody of the Department of Homeland Security ("DHS"). DHS issued a Notice to Appear in

removal proceedings, charging Mr. Chairez as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) & (a)(2)(C), and arguing that his conviction for felony discharge of a firearm was an aggravated felony under 8 U.S.C. § 1101(a)(43)(E). DHS determined that Mr. Chairez's conviction rendered him ineligible to be released on bond under 8 U.S.C. § 1226(c) during the duration of his removal proceedings.[1]

On April 1, 2013, the immigration judge ("IJ") held a hearing at which DHS filed additional charges of removability. Also at the hearing, Mr. Chairez's counsel requested the case be continued for one week, until April 8, 2013. At Mr. Chairez's counsel's request, the case was again continued for another two weeks, until April 22, 2013. At the April 22 hearing, Mr. Chairez's counsel moved for another continuance and requested time to brief the issue of whether Mr. Chairez's offense constitutes an aggravated felony, which would render him ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3).

Seven weeks later, on June 10, 2013, the IJ sustained DHS's charges that Mr. Chairez was removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) & (a)(2)(C). Mr. Chairez subsequently requested another continuance so that he could file a Convention Against Torture ("CAT") application. Mr. Chairez filed his CAT application on June 20, 2013.

Nearly two months later, on August 14, 2013, the IJ held a hearing on Mr. Chairez's removal and CAT claims. The day before the hearing, Mr. Chairez retained new counsel. At the hearing, Mr. Chairez's new counsel advised the IJ that he was not prepared to proceed on Mr. Chairez's CAT application and that he wished to raise new legal arguments based on the Supreme Court's recent decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). Counsel

---

[1] In general, the detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States" is discretionary. 8 U.S.C. § 1226(a). But detention is mandatory for "any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1).

also advised the IJ that Mr. Chairez may be able to seek relief from removal by readjusting to permanent resident status—based on a visa petition filed by Mr. Chairez's son who is a U.S. citizen—and obtain a 212(h) discretionary waiver under 8 U.S.C. § 1182(h). The IJ subsequently continued proceedings until August 26, 2013.

On the morning of the August 26 hearing, Mr. Chairez filed a motion to reconsider removability and terminate proceedings based on *Descamps*. Mr. Chairez's *Descamps* arguments concerned whether Mr. Chairez's conviction for felony discharge of a firearm was divisible, as outlined by *Descamps*, so as to permit application of the modified categorical approach to determine removability. The IJ granted DHS until September 6, 2013 to file a response to Mr. Chairez's motion.

On September 18, 2013, the IJ denied Mr. Chairez's motions and ordered him removed. The IJ did not address Mr. Chairez's *Descamps* arguments in its decision. Mr. Chairez subsequently filed an appeal to the Board of Immigration Appeals ("BIA"). At this point, Mr. Chairez also withdrew his CAT claim. The BIA gave the parties until November 26, 2013 to file their appellate briefs.

On April 9, 2014—nearly five months after the close of briefing on Mr. Chairez's appeal—the BIA requested supplemental briefing on *Descamps*, an issue that DHS had failed to meaningfully brief or address in its appellate briefing. Oral argument took place one month later on May 14, 2014.

Over two months later, on July 24, 2014, the BIA issued its first published decision and held that, under *Descamps*, Mr. Chairez was not removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). Although the BIA found that Mr. Chairez still remained removable under 8 U.S.C. § 1227(a)(2)(C) for various firearm offenses, the BIA remanded proceedings to

3

the IJ to determine whether Mr. Chairez was eligible for any relief.

On August 25, 2014, DHS filed a motion to reconsider the BIA's ruling. On February 11, 2015—nearly six months later—the BIA granted DHS's motion to reconsider and reversed its prior decision on Mr. Chairez's removability based on a recent Tenth Circuit decision interpreting *Descamps*, *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014). The BIA concluded that under *Trent*, Mr. Chairez's conviction for felony discharge of a firearm was divisible and that the IJ properly employed the modified categorical approach in finding Mr. Chairez removable as an aggravated felon. The BIA again remanded proceedings to the IJ for further consideration of any relief.

Two months later, on April 13, 2015, the IJ held a hearing at which Mr. Chairez filed a second motion to terminate proceedings and for relief from removal. Mr. Chairez's second motion was based on the fact that Mr. Chairez's son's visa petition had been approved, thereby allowing Mr. Chairez to apply for a 212(h) discretionary waiver of inadmissibility.

The IJ held a hearing on Mr. Chairez's motion one month later, on May 21, 2015. After hearing from Mr. Chairez's first two witnesses, the IJ continued the matter for another month, until June 18, 2015, to hear from Mr. Chairez's remaining three witnesses. On September 9, 2015—nearly three months later—the IJ again denied Mr. Chairez's motion and ordered him removed. Specifically, the IJ denied Mr. Chairez's application for a 212(h) waiver because Mr. Chairez had failed to establish the requisite hardship to a qualifying relative.

Mr. Chairez again appealed the IJ's decision to the BIA, and the BIA set a briefing schedule for the appeal. On October 30, 2015, Loretta Lynch, the U.S. Attorney General, referred the case to herself to address "the proper approach for determining 'divisibility' within the meaning of *Descamps*," an issue raised in Mr. Chairez's original motion for relief filed in

August 2013. Accordingly, the BIA cancelled its briefing schedule.

Mr. Chairez filed this petition for habeas corpus under 28 U.S.C. § 2241 on November 20, 2015. Mr. Chairez's case remains pending before the Attorney General and his appeal before the BIA remains stayed.

At present, Mr. Chairez is in the physical custody of the U.S. Immigration and Customs Enforcement ("ICE"), and is detained at the Utah County Facility in Spanish Fork, Utah. Mr. Chairez is under the direct control of Respondents and their agents. As such, Mr. Chairez is suing the following individuals in their official capacities: Daniel Bible, the Field Office Director for the ICE Salt Lake City field office; James O. Tracy, the Sheriff of the Utah County Jail who oversees the day-to-day operations of the facility where Mr. Chairez is held; Jeh Johnson, the Secretary of Homeland Security and head of DHS;[2] and Loretta Lynch, the U.S. Attorney General and head of the Department of Justice, which encompasses the BIA and the IJs as subunits of the Executive Office of Immigration Review.[3]

## ANALYSIS

In his habeas petition, Mr. Chairez argues that his prolonged and continued detention violates the Immigration and Nationality Act ("INA") and his due process rights under the U.S. Constitution. Specifically, Mr. Chairez contends that the INA does not authorize prolonged mandatory detention under 8 U.S.C. § 1226(c) without a constitutionally adequate bond hearing. Mr. Chairez therefore seeks an individualized, constitutionally adequate bond hearing before a neutral adjudicator to determine whether his continued detention is necessary.[4]

---

[2] ICE is a subdivision of DHS.

[3] In their opposition to Mr. Chairez's petition, Respondents contend that "the only proper Respondent in this case is . . . [Mr.] Tracy" and move to dismiss the remaining Respondents. But pursuant to the court's local rules, "No motion . . . may be included in a response or reply memorandum. Such motions must be made in a separate document." DUCivR 7-1(b)(1)(A). Respondents' motion is therefore denied.

[4] Respondents contend that this court lacks subject matter jurisdiction over Mr. Chairez's petition because Mr. Chairez "is not being held 'in violation of the Constitution or laws or treaties of the United States.'" (quoting 28

The Government has authority to detain aliens during removal proceedings. *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 472 (3d Cir. 2015) (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Up until the late 1980s, the Attorney General had authority to release aliens during their removal proceedings at his or her discretion. *Reid v. Donelan*, Nos. 14-1270, 14-1803, 14-1823, 2016 WL 1458915, at *3 (1st Cir. 2016) (citing *Demore v. Kim*, 538 U.S. 510, 519 (2003)). But Congress became concerned that "significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes." *Chavez-Alvarez*, 783 F.3d at 472–73 (citing *Demore*, 538 U.S. at 518–19). In response to this problem, Congress enacted 8 U.S.C. § 1226(c), "which requires the Attorney General to take criminal aliens into custody 'when released' from criminal custody and only permits the release of such aliens for limited witness protection purposes." *Reid*, 2016 WL 1458915, at *3 (footnotes omitted).

The Supreme Court acknowledged the Government's authority to detain aliens under § 1226(c) in *Demore v. Kim*, 538 U.S. 510, 531 (2003), where it noted that "[d]etention is necessarily a part of [the] deportation procedure," *id.* at 524 (quoting *Carlson v. Landon*, 342 U.S. 524, 538 (1952)).[5] But the Court also recognized that it is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). As part of this due process right, the Supreme Court held that "the Government may constitutionally detain deportable aliens during *the limited period* necessary for their removal proceedings." *Id.* at 526 (emphasis added); *see also id.* at 513

---

U.S.C. § 2241(c)(3)). But the Supreme Court has held that "federal courts have jurisdiction to review a constitutional challenge to § 1226(c)." *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). Accordingly, this court has jurisdiction to review Mr. Chairez's petition.

[5] Respondents seem to argue that Mr. Chairez should have requested a *Joseph* hearing to determine whether his charges subject him to mandatory detention. But Mr. Chairez's habeas petition is challenging the constitutionality of the *length* of his mandatory detention under § 1226(c), not the constitutionality of mandatory detention in general. Because Mr. Chairez is not challenging the constitutionality of mandatory detention under § 1226(c), the court need not address Respondents' arguments concerning *Joseph* hearings.

("We hold that Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the *brief* period necessary for their removal proceedings." (emphasis added)).

But *Demore*'s holding was limited. While the Supreme Court upheld the constitutionality of mandatory detentions under § 1226(c), *Demore*, 538 U.S. at 531, it left open the question of "how long is too long" for detaining an alien during removal proceedings. Although the Supreme Court did not address what length of time is reasonable for a mandatory detention under § 1226(c),

> the Court took pains to point out the specific durations that it envisioned were encompassed by its holding: "[T]he detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien choose to appeal."

*Reid*, 2016 WL 1458915, at *4 (quoting *Demore*, 538 U.S. at 530). And Justice Kennedy acknowledged in his concurrence that at some point detention under § 1226(c) would become unreasonable: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring).

Since *Demore*, "every federal court of appeals to examine § 1226(c) has recognized that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention that can be considered justifiable under that statute." *Reid*, 2016 WL 1458915, at *4 (citing *Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015); *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232–33 (3d Cir. 2011);

7

*Ly v. Hansen*, 351 F.3d 263, 269–70 (6th Cir. 2003)). "And, each circuit has found it necessary to read an implicit reasonableness requirement into the statute itself, generally based on the doctrine of constitutional avoidance." *Id.* (citing *Lora*, 804 F.3d at 614; *Rodriguez*, 715 F.3d at 1138; *Diop*, 656 F.3d at 235; *Ly*, 351 F.3d at 270).

But the circuits have split on how to impose this reasonableness requirement. The Second and Ninth Circuits apply a "bright-line rule" and have held that "the government's 'statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness.'" *Lora*, 804 F.3d at 614 (quoting *Rodriguez*, 715 F.3d at 1133). Under this approach, every alien detained under § 1226(c) "must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Id.* at 616.

In contrast, the First, Third, and Sixth Circuits conduct a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case" to determine whether detention without an individualized hearing is unreasonable. *Diop*, 656 F.3d at 234; *see also Reid*, 2016 WL 1458915, at *10; *Ly*, 351 F.3d at 271. Under this approach, the detainee must file a habeas petition challenging his or her detention, with the district court "determin[ing] whether the individual's detention has crossed the 'reasonableness' threshold, thus entitling him [or her] to a bail hearing." *Reid*, 2016 WL 1458915, at *5 (quoting *Lora*, 804 F.3d at 614).

The Tenth Circuit has yet to address this issue.[6] Although Mr. Chairez advocates for the use of the Second and Ninth Circuits' bright-line rule, he argues that under either approach, he is entitled to a bond hearing because his detention has been unreasonably prolonged. Given the absence of controlling precedent, the court addresses the length of Mr. Chairez's detention under both the bright-line rule and the fact-dependent inquiry. The court finds that, under either

---

[6] Although the Tenth Circuit has addressed whether a gap in custody triggers mandatory detention under § 1226(c) in *Olmos v. Holder*, 780 F.3d 1313 (10th Cir. 2015), it did not address when the length of a mandatory detention is no longer reasonable.

8

approach, Mr. Chairez's detention has become unreasonable under § 1226(c).

## I.  Bright-Line Rule

Under the Second and Ninth Circuits' bright-line rule, mandatory detention under § 1226(c) is "limited to a six-month period, subject to a finding of flight risk or dangerousness." *Lora*, 804 F.3d at 614 (quoting *Rodriguez*, 715 F.3d at 1133). Thus, under this rule, an alien detained under § 1226(c) is entitled to a bail hearing within six months of his or her detention. *Id.* at 616.

Mr. Chairez has been detained since March 14, 2013—over three years and two months—and has yet to have a bond hearing before an immigration judge. Under the bright-line rule, his continued detention without a bond hearing is presumptively unreasonable. Mr. Chairez is therefore entitled to a bail hearing.[7]

## II.  Fact-Dependent Inquiry

Even if the bright-line rule is found to be inappropriate, Mr. Chairez's prolonged detention without a bond hearing is nonetheless unreasonable under the fact-dependent inquiry. Under the First, Third, and Sixth Circuits' approach, the reasonableness of the length of a mandatory detention under § 1226(c) depends on a "highly fact-specific" balancing framework that "assess[es] . . . all of the circumstances of any given case" to determine whether detention without an individualized hearing is unreasonable. *See Chavez-Alvarez*, 783 F.3d at 474; *Diop*, 656 F.3d at 234. Under this framework, the court must "weigh[] the goals of the statute against the personal costs to [the detainee's] liberty." *Chavez-Alvarez*, 783 F.3d at 475.

In conducting this balancing, courts consider factors such as (A) "the total length of the

---

[7] Respondents challenge the Second and Ninth Circuits' bright-line rule as "wrongly decided" and "bad policy." Because the court finds that Mr. Chairez is nonetheless entitled to a bond hearing under the fact-dependent inquiry used by the First, Third, and Sixth Circuits, this court need not evaluate the validity of the Second and Ninth Circuits' approach.

9

detention," (B) "the foreseeability of proceedings concluding in the near future (or the likely duration of future detention)," (C) "the period of the detention compared to the criminal sentence," (D) "the promptness (or delay) of the immigration authorities or the detainee," *Reid*, 2016 WL 1458915, at *10 & n.4, (E) the complexity of the issues involved in the case, *Chavez-Alvarez*, 783 F.3d at 475, and (F) "the foreseeability of removal", *Reid*, 2016 WL 1458915, at *11. The court considers each of these factors below.

### A. Total Length of the Detention

Mr. Chairez has been detained since March 14, 2013—over three years and two months. In *Demore*, the Supreme Court contemplated that most detentions under § 1226(c) "last[] roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien choose to appeal." *Demore*, 538 U.S. at 530. Moreover, the First, Third, and Sixth Circuits have held that lesser periods of detention are unreasonable. *See Reid*, 2016 WL 1458915, at *11 (fourteen months); *Chavez-Alvarez*, 783 F.3d at 478 (one year); *Diop*, 656 F.3d at 223, 234–35 (two years, eleven months); *Ly*, 351 F.3d at 271 (eighteen months). Mr. Chairez's detention is well beyond the brief detention contemplated by *Demore* and those considered unreasonable by circuit courts.

### B. Foreseeability of the Resolution of Removal Proceedings

Resolution of Mr. Chairez's removal proceedings is not foreseeable. The Attorney General stayed Mr. Chairez's second round of appeals before the BIA, and it is uncertain when the Attorney General will issue her decision. Moreover, the Attorney General's decision only concerns divisibility under *Descamps*, an issue raised in Mr. Chairez's fall 2013 appeal, and not issues raised in the current appeal pending before the BIA. "Although it is not for this court to decide whether [Mr. Chairez] is deportable," the court recognizes that issues in this case are "not

finally decided," and that "this added complexity is likely to extend the removal proceedings." *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 472 (D. Mass. 2010).

Moreover, resolution of Mr. Chairez's removal proceedings is not reasonably foreseeable "because the court lacks reliable information regarding the length of time required to complete the current appellate proceedings." *Id.* From start to finish, Mr. Chairez's first round of appeals lasted from September 2013 to February 2015—a period of seventeen months. This period of time well exceeds the five-month appeal period anticipated by the Supreme Court in *Demore*. *Demore*, 538 U.S. at 530.

At present, Mr. Chairez's second round of appeals, which began in September 2015, have already lasted for nearly eight months. Although Respondents argue that there is a prospect of actual removal once proceedings are completed, a final decision may still be months away.[8] Following the Attorney General's decision, the BIA will resume jurisdiction of Mr. Chairez's appeal. But briefing for Mr. Chairez's appeal before the BIA is incomplete, and once the BIA finally releases its decision, the BIA could again remand Mr. Chairez's case to the IJ, making final resolution and Mr. Chairez's continued detention "certainly far enough out to implicate due process concerns." *See Reid*, 2016 WL 1458915, at *11 (quoting *Reid v. Donelan*, 991 F. Supp. 2d 275, 282 (D. Mass. 2014)). And even if the BIA affirms the IJ's decision, Mr. Chairez could then appeal his case to the Tenth Circuit. Thus, at present, there is no end in sight to Mr. Chairez's removal proceedings.

### C.     Period of Detention Compared to the Criminal Sentence

Mr. Chairez served a forty-four day sentence for his conviction of felony discharge of a

---

[8] At the hearing, Mr. Chairez's counsel informed the court that the Supreme Court's pending decision in Mathis v. United States, No. 15-6092 (oral argument April 26, 2016) may affect the *Descamps* issues raised in Mr. Chairez's case. Because of this, the parties—including the Attorney General—will likely need additional time to address the Supreme Court's forthcoming decision and how it affects Mr. Chairez's claims, thereby making Mr. Chairez's "already lengthy detention considerably longer." *Chavez-Alvarez*, 783 F.3d at 478.

firearm. But his continued detention under § 1226(c) has lasted more than 1,100 days—over twenty-five times his original sentence. *See Ly*, 351 F.3d at 271 (granting a bond hearing for a detainee who "spent considerably more time than [his twelve-month criminal sentence] in INS custody awaiting a determination on removal").

### D.   Delays by Immigration Authorities and Detainee

Both Respondents and Mr. Chairez contend that the other side is responsible for creating unreasonable delays in this case. In general, "the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Diop*, 656 F.3d at 234. Although "hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant," unreasonable delays may still occur. *Ly*, 351 F.3d at 271; *see also Diop*, 656 F.3d at 223 (noting that "individual actions by various actors in the immigration system, each of which takes only a reasonable amount of time to accomplish, can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time").

Respondents contend that the delays in Mr. Chairez's removal proceedings are "directly attributable" to Mr. Chairez's litigation decisions. Respondents point to the continuances Mr. Chairez requested in April 2013 to brief the issue of Mr. Chairez's removability, in June 2013 to prepare a CAT application, and in August 2013 when Mr. Chairez obtained new counsel. Mr. Chairez, however, "does not dispute that his detention was reasonable at least up until the point that the parties had a full and fair opportunity to address the implications of *Descamps*," beginning in June 2013.

But even if these delays are considered in their entirety—a period of approximately four

months—they "cannot credibly be considered" as the determining factor leading to the prolonged length of Mr. Chairez's detention. *See Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 270 (3d Cir. 2012). A four-month delay pales in comparison to the seventeen-month-period it took to resolve Mr. Chairez's first round of appeals.

Detainees may be "partially responsible for the length of the proceedings." *Ly*, 351 F.3d at 272 (holding that the detainee was partially responsible for the delay because he "applied for cancellation of removal and for change of status" and requested that a hearing be rescheduled"). But "the INS must still act promptly in advancing its interests." *Id.* Respondents fail to explain why Mr. Chairez's first appeal to the BIA took so long. Although the court acknowledges that DHS was entitled to file its motion to reconsider the BIA's initial July 2014 decision, the court is not persuaded that DHS's motion shows DHS "vigorously pursued" Mr. Chairez's removal. In fact, DHS's actions during the pendency of Mr. Chairez's initial appeal indicate that DHS's prosecution of this case was less than enthusiastic. As Mr. Chairez noted, DHS failed to meaningfully brief or address Mr. Chairez's *Descamps* arguments until the BIA ordered supplemental briefing in April 9, 2014—nearly five months after the close of briefing. Nor did the IJ address Mr. Chairez's *Descamps* arguments in its initial September 2013 decision. Such failures resulted in unreasonable delays in Mr. Chairez's case.

Furthermore, the record does not suggest that Mr. Chairez engaged in "dilatory tactics." Although Respondents argue that Mr. Chairez's presentation of five witnesses in his May and June 2015 hearings before the IJ further lengthened Mr. Chairez's removal proceedings, Respondents have not shown that Mr. Chairez's actions, either in presenting witnesses, appealing the IJ's decisions, or requesting continuances, were meant to delay Mr. Chairez's immigration proceedings. Rather, Mr. Chairez "raised a colorable claim against deportation and . . .

vigorously contest[ed] removal," as is his right. *Reid*, 2016 WL 1458915, at *11 (quoting *Reid*, 991 F. Supp. 2d at 282); *see also Chavez-Alvarez*, 783 F.3d at 476 (holding that good faith challenges to removability charges include "reliance on a contested legal theory" and "the presence of a new legal issue").

Courts have also recognized that "there is a difference between 'dilatory tactics' and the exercise of an alien's rights to appeal" and bring other good faith challenges. *Reid*, 2016 WL 1458915, at *10 n.4.

> [A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Ly*, 351 F.3d at 272. "[T]o the extent that [Mr. Chairez] has delayed the removal process simply by contesting deportation, that delay should not be counted against him." *Flores-Powell*, 677 F. Supp. 2d at 473; *see also Leslie*, 678 F.3d at 271 ("To conclude that [Petitioner's] voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would 'effectively punish [Petitioner] for pursuing applicable legal remedies.'" (quoting *Oyedji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004))).

Moreover, by the time Mr. Chairez's first appeal was underway, "the Government had, by then, enough exposure to [Mr. Chairez], and sufficient time to examine information about him to assess whether he truly posed a flight risk or presented any danger to the community." *Chavez-Alvarez*, 783 F.3d at 477. With this information at hand, the Government was in a position to "produce individualized evidence that [Mr. Chairez's] continued detention was or is

necessary" and conduct a bond hearing regarding Mr. Chairez's continued detention. *Id.* at 478.

### E.   Complexity of Issues Involved

Mr. Chairez's case, including the unique issues of law raised by *Descamps*, is complex. The complexity of these issues led the Attorney General to refer Mr. Chairez's case to herself, thereby resulting in further delay. In addition, the court "cannot find any evidence that [Mr. Chairez] raised any of these issues," including those implicated by *Descamps*, "for the purpose of delay." *Chavez-Alvarez*, 783 F.3d at 476. Although Mr. Chairez "undoubtedly is responsible for choosing to challenge his removal by raising complicated issues that have taken a lot of time to argue and decide"—and are still under the Attorney General's review—"this does not undermine his ability to claim that his detention is unreasonable." *Id.* at 477.

### F.   Foreseeability of Removal

Finally, Respondents contend that the court should consider the foreseeability of Mr. Chairez's removal. Specifically, Respondents argue that the IJ's and BIA's prior findings show that there is a high likelihood that Mr. Chairez's immigration proceedings will result in removal, and that as such, continued detention serves the statute's purposes of ensuring that Mr. Chairez attends removal proceedings and that his release will not pose a danger to the community. Even assuming this to be true, Respondents have failed to show how this factor standing alone supersedes all of the other factors that weigh in Mr. Chairez's favor. Indeed, at the hearing, Respondents were unable to point to a single, published case showing that likelihood of removal outweighs all of the other factors.[9]

Based upon this fact-dependent inquiry, the court concludes that Mr. Chairez's continued mandatory detention is unreasonable. Mr. Chairez is therefore entitled to a bond hearing.

---

[9] At the hearing, Respondents argued that the length of Mr. Chairez's detention should not be the only determining factor of whether the statute's purposes are being met. Yet, as seen above, the court's analysis under the fact-dependent inquiry is based on more than the sheer number of days of Mr. Chairez's detention.

"Ultimately, § 1226(c) includes a 'reasonableness' threshold. Regardless of how that limit is defined, [Mr. Chairez's] detention has crossed the line." *Reid*, 991 F. Supp. 2d at 282. Accordingly, under either the bright-line rule or the fact-dependent inquiry, the length of Mr. Chairez's detention under § 1226(c) has become unreasonable. Mr. Chairez is therefore entitled to a bond hearing.

## CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Chairez's Petition for Writ of Habeas Corpus (Docket 2). The court hereby ORDERS as follows:

1. Mr. Chairez shall receive a bond hearing within thirty days of this order before an immigration judge in order to determine whether it is necessary to continue to detain Mr. Chairez;[10] and

2. Counsel for Respondents shall report to this court within ten days following the bond hearing regarding compliance with this order. Respondents' report must include notification regarding the outcome of the bond hearing.

IT IS SO ORDRED.

DATED this 18th day of May, 2016.

BY THE COURT:

_____
Judge Jill N. Parrish
United States District Court

---

[10] At the hearing, the parties raised the issue of who should bear the burden at the bond hearing of proving whether continued detention is necessary. Because this issue was not briefed before the court, the court is not in a position to resolve it. Accordingly, the immigration judge assigned to Mr. Chairez's bond hearing is to determine which party bears the burden of proof.